

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

CARRIE LITTLE,                )          No. ED99940

                                 )

       Appellant,             )          Appeal from the Circuit Court

                                 )          of St. Louis County

vs.                               )

                                 )          Honorable Maura B. McShane

STATE OF MISSOURI,        )

                                 )

       Respondent.          )          FILED: April 1, 2014

Carrie Little ("Movant") appeals from the motion court's judgment, without an evidentiary hearing, denying her Rule 24.035 motion for post-conviction relief. Movant pled guilty to one count of burglary in the first degree and one count of assault in the second degree. She was sentenced to two concurrent terms of 7 years in the Missouri Department of Corrections. We affirm.

## I. Background

In yet another case where reality "changes" once a party takes up residence in the Department of Corrections, we are faced with reconciling statements made in open court, under oath, versus allegations made after living in a cell for a period of time. Movant was charged by the State of Missouri ("State") in a two-count information with burglary in the first degree (count I) and assault in the second degree (count II), relating to an incident occurring in May 2011 that involved one victim. Pursuant to a plea agreement

with Movant, the State *nolle prossed* counts III, IV, and V, charging armed criminal action, unlawful use of a weapon, and stealing, respectively. On October 27, 2011, Movant appeared before the court in order to enter her guilty plea pursuant to the State's agreement to the remaining charges of first-degree burglary and second-degree assault. Movant agreed that when she signed the plea form submitted to the court, she had read it and understood what she was doing. Movant affirmed that she understood the charges, she told her plea counsel the facts and circumstances surrounding the charged crimes, and her plea counsel fully explained the nature and elements of the charges as well as any possible defenses.

During the plea hearing, the prosecutor stated the evidence against Movant:

> Your Honor, the evidence would be in Count I that [Movant] committed the class B felony of burglary in the first degree, in that . . . [Movant], while acting with Calvin Hurd and Damon Hurd and others, knowingly entered unlawfully in an inhabitable structure, located at 238 Sadonia Avenue and possessed by Christopher Jackson, for the purpose of committing assault therein, and while in such inhabitable structure there was present in such inhabitable structure Christopher Jackson, a person who was not a participant in the crime.
> In Count 2, the evidence will be that [Movant] committed the class C felony of assault in the second degree, in that at the same time and place as Count 1, [Movant], while acting with Calvin Hurd and Damon Hurd and others, knowingly caused physical injury to Christopher Jackson by means of a deadly weapon by pistol whipping him.
> Your Honor, what happened, more specifically, was that the defendant in this case was married to Christopher Jackson. They had a child together. There was some disagreement regarding the custody, and [Movant] was upset with the way things were going with that custody and visitation. She was angry with Christopher Jackson, and she hired some people – those people were Calvin Hurd and Damon Hurd and two others – to go over to Christopher Jackson's residence and assault him. She was going to pay them money and/or give them furniture or other items of value to these people, Calvin Hurd, Damon Hurd, and two others, to go over there and assault Christopher Jackson.
> As a result of [Movant's] acting together with hiring them, encouraging them, soliciting them, to do this crime of assault over at 238 Sadonia Avenue, where this assault was to be performed against

2

Christopher Jackson, these people went over and did that. They were hired to do that by [Movant]. [Movant] told them where to go to commit this crime, where the victim would be located, what the address was, why she wanted – she told them why she wanted him assaulted and beat up, and that she would pay them.

As a result of that, they went over there. They entered the residence. They, meaning Calvin and Damon Hurd and two others entered the residence and assaulted Christopher Jackson by pistol whipping him, causing severe injury to the head and body of Christopher Jackson.

He had deep cuts to his head, which had to be stapled closed at the hospital. During this incident, Christopher Jackson's girlfriend was in the back room of the residence and she happened to be holding onto a shotgun. And Calvin Hurd went in the back, grabbed the shotgun from her, pointed the shotgun at her, threatened her with the shotgun, told her to get on the ground and shut up. He then grabbed the shotgun and left the residence with the shotgun. They all went over to [Movant's] residence after the crime, the [Movant's] residence, Your Honor. That is basically what the evidence would be.

The prosecutor added that Calvin Hurd would testify that Movant set up the deal. Keith Johnson, who was a co-defendant in this case, also would testify that he was initially solicited by the defendant to bring some people to her house to commit this crime, and he was present for the planning of the crime but then backed out when it came down to committing the crime. Additionally, Movant told her niece Casey that she had done the crime, and Casey was recorded telling police that Movant did the crime. The court asked Movant then whether the evidence stated by the prosecutor was "substantially correct" and Movant responded, "Yes." The prosecutor explained the range of punishment and Movant responded that she understood. The prosecutor stated the punishment recommended by the State, and Movant again responded that was her understanding. She responded that she had an opportunity to go through the witness agreement being offered to her and had an opportunity to discuss the matter with her attorney such that she understood the terms of the agreement. Movant answered that she wished to continue with her plea.

3

The plea court asked Movant whether anyone had made any promises or threats to her or to her family to induce her to plead guilty, and Movant responded "No, ma'am." Movant answered that her attorney had not refused to comply with any of her requests and he had answered all Movant's questions. Movant stated "yes," she had been given enough time to discuss her case with her attorney. She had no complaints or criticisms of her attorney, and did not know of anything he could have done that he had not done, including contacting witnesses, further investigating the case, or fully advising Movant as to all aspects of her case. When asked whether Movant "believe[d] [her] attorney has adequately, completely, and effectively represented [her] in [her] defense to this charge," Movant responded, "Yes, ma'am."

Further, Movant answered that she understood she would be entitled to a trial by jury instead of pleading guilty, that the jury would be instructed that Movant was presumed to be innocent and the State would be required to prove her guilt beyond a reasonable doubt, that Movant would have the right to testify or not, and that she could present evidence and witnesses in her defense. Movant specifically responded that she understood by pleading guilty she was waiving all those rights and that there would not be a trial.

The plea court asked Movant whether, at any time, had her attorney or anyone else told her to lie in response to the court's questions. Movant answered "no." The court again asked Movant about her understanding of abiding by the witness agreement and its conditions, and Movant responded that she understood and she still wished to continue with her plea. The court asked, "Then are you pleading guilty voluntarily and of your own free will because you are guilty as charged?" Movant answered, "Yes, ma'am." The

4

court followed by asking, "Then how do you plead to the charge of burglary in the first degree, a class B felony, and assault in the second degree, a class C felony?" and Movant stated, "Guilty." The court found Movant's plea was made "voluntarily and intelligently with a full understanding of the charge and the consequences of the plea and with an understanding of her rights attending a jury trial and the effect of a plea of guilty on those rights." The court also found a factual basis for the plea and accepted Movant's plea of guilty to the offense to which she was charged.

Approximately six months later, on April 19, 2012, Movant appeared in court for sentencing. The court asked Movant if she knew of any reason why the court should not sentence her, and Movant responded "no." The court then sentenced Movant to concurrent terms of 7 years in the Department of Corrections on counts I and II. The court explained then that it was required to examine Movant as to the assistance of counsel she received, and reminded her, "I have already placed you under oath, so you are still under oath."

When asked, Movant answered affirmatively that she had entered her plea of guilty on October 27, 2011, and was sentenced "on today's date." Movant knew her attorney, who represented her throughout the proceedings, and Movant stated he was present at the time she entered her plea as well as during the sentencing. The court asked Movant, "Did you have sufficient opportunity to discuss your case with [your attorney] before you entered your plea of guilty?" and Movant answered, "Yes, ma'am." The court asked, "Did he do the things you asked him to do prior to your entering your plea of guilty?" and Movant responded, "Yes, ma'am." As the court asked during the plea

5

hearing, it again questioned, "Did he refrain from doing things you asked him not to do prior to your entering your plea of guilty?" and Movant stated, "Yes, ma'am."

Movant further responded that the sentence imposed was the sentence expected under the plea bargain, and that her attorney did not communicate any threats or promises to her to induce her to enter her plea of guilty. The court asked Movant, "Are you satisfied with the services rendered to you by your attorney, whether or not you are satisfied with the outcome of this case?" and Movant answered, "Absolutely." The court then found that "no probable cause of ineffective assistance of counsel exists" and remanded Movant for transportation to the Department of Corrections.

Movant filed her pro se Rule 24.035 motion for post-conviction relief on July 24, 2012. Appointed counsel filed Movant's amended Rule 24.035 motion on November 26, 2012. The motion court later entered a judgment denying Movant's Rule 24.035 motion without an evidentiary hearing. This appeal follows.

## II. Discussion

In her sole point on appeal, Movant alleges the motion court clearly erred in denying her Rule 24.035 motion without an evidentiary hearing because this violated her rights to counsel, jury trial, and due process of law, in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution. Movant claims that her motion alleged a meritorious claim based on facts, not refuted by the record, warranting a hearing: she wanted to go to trial and testify that she did not know the victim was going to be assaulted and never intended that assault, and her guilty plea was involuntary, which resulted from her attorney pressuring and coercing her to plead guilty by telling her that if she went to trial

6

it was inevitable that she would receive a longer sentence than that which was available via the plea agreement. Movant alleges she was prejudiced because, but for counsel's ineffectiveness, she would not have pleaded guilty out of fear and given up her right to trial.

A. Standard of Review

We review a denial of post-conviction relief to determine whether the motion court's findings and conclusions are clearly erroneous. Rule 24.035(k); Webb v. State, 334 S.W.3d 126, 128 (Mo. banc 2011). Findings and conclusions are clearly erroneous if, upon review of the entire record, we are left with the definite and firm impression that a mistake has been made. Gehrke v. State, 280 S.W.3d 54, 56-57 (Mo. banc 2009).

A movant is entitled to an evidentiary hearing only if (1) the movant pled facts, not conclusions, warranting relief; (2) the facts alleged are not refuted by the record; and (3) the matters complained of resulted in prejudice to the movant. Id. When the movant's claim is one of ineffective assistance of counsel, the movant must allege facts, unrefuted by the record, that (1) trial counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney and (2) movant was thereby prejudiced. Webb, 334 S.W.3d at 128. To show prejudice when challenging a guilty plea, the movant must allege facts showing "'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Id. (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Hence, "[f]ollowing a guilty plea, the effectiveness of counsel is relevant only to the extent that it affected whether or not the plea was made voluntarily and knowingly." Morales v. State, 104 S.W.3d 432, 434 (Mo. App. E.D. 2003). Trial counsel is presumed effective, and a

7

movant bears the burden of proving otherwise.  Forrest v. State, 290 S.W.3d 704, 708 (Mo. banc 2009).

B.  Analysis

Movant alleges that her Plea Counsel pressured her to plead guilty, and that Movant only then chose to plead guilty out of fear based on her attorney's statement that if she went to trial, she would be found guilty and she would receive a 15-year sentence rather than the 7-year sentence available by choosing to plead.

A guilty plea must be a voluntary expression of the defendant's choice and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences of the act.  Roberts v. State, 276 S.W.3d 833, 836 (Mo. banc 2009).  "A plea of guilty is not made voluntarily if the defendant is misled, or is induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded."  Bequette v. State, 161 S.W.3d 905, 907 (Mo. App. E.D. 2005) (quoting Drew v. State, 436 S.W.2d 727, 729 (Mo. 1969)) (internal citations omitted).  "When a movant pleads guilty and then affirmatively states in court that he is satisfied with the performance of his trial counsel, he is not then entitled to an evidentiary hearing on a claim that counsel was ineffective for failure to investigate, because such claim is refuted by the record."  Simmons v. State, 100 S.W.3d 143, 146 (Mo. App. E.D. 2003).  Moreover, "[m]ere prediction or advice of counsel will not lead to a finding of legal coercion rendering a guilty plea involuntary."  Nesbitt v. State, 335 S.W.3d 67, 70 (Mo. App. E.D. 2011).

The motion court found that Movant's claims are refuted by the record of the plea. The motion court stated that Movant told the plea court that she wanted to plead guilty,

8

that she signed the plea form and understood what she was doing. Movant acknowledged to the plea court that her Plea Counsel explained the elements of the crimes and potential defenses. Movant stated she wished to plead guilty, that no one had made any threats or promises to Movant or her family to induce her to plead guilty, and that no one told her to lie in response to the court's questions. Movant again told the plea court she wished to continue with her guilty plea. Movant told the court she was pleading guilty voluntarily and of her own free will because she was guilty as charged. Movant was not faced with any "trick questions" posed by the plea judge. The questions asked and the responses given in open court, under oath, contain no unusual words or legalese. The phrase "were any threats or promises made . . ." is not difficult to understand or subject to interpretation.

The motion court also found that at the sentencing hearing, conducted almost six months after the plea, Movant re-stated that Plea Counsel did not communicate any threats or promises to induce Movant to plead guilty. Movant stated that she was "absolutely" satisfied with the services rendered by Plea Counsel. Based on the record, the motion court found that Movant's guilty pleas were made voluntarily and intelligently with a full understanding of the charges and consequences of her pleas and with an understanding of her rights attending a jury trial and the effect of a jury trial on those rights. The motion court found Plea Counsel did not coerce or pressure Movant into pleading guilty. Based on Movant's answers, made under oath in open court, we cannot find any basis to even suspect that Movant was coerced or pressured into pleading guilty.

Furthermore, the motion court found that Movant's allegation that she wanted to go to trial to testify, specifically that she was not aware that the co-defendants were going

to the victim's home to assault the victim and that she did not intend for the co-defendants to assault the victim, was also refuted by the record. Movant stated on numerous occasions that she wished to plead guilty rather than having a jury trial. The State recited a lengthy factual statement of evidence prior to the plea, which included the offense charged, and that Movant hired, encouraged, and solicited the co-defendants to go to the victim's home to assault the victim, that Movant told the co-defendants where to go to commit the crime, where the victim could be located, the victim's address, and why she wanted the victim assaulted, and further, that Movant told them she would pay them for their deed. The State said at least three individuals would testify against Movant. Movant admitted that the State's factual basis for the crimes was "substantially correct."

"To preclude an evidentiary hearing, inquiry into defendant's satisfaction with performance of trial counsel conducted at sentencing proceedings must be specific enough to elicit responses from which [the] motion court may determine that record refutes conclusively allegation of ineffectiveness asserted in motion for post[-]conviction relief based upon ineffective assistance of trial counsel." Evans v. State, 921 S.W.2d 162, 165 (Mo. App. W.D. 1996). "Statements made by the defendant during sentencing refute ineffective assistance of counsel claims if the questions and responses are specific enough to refute conclusively the movant's allegations." Redeemer v. State, 979 S.W.2d 565, 571 (Mo. App. W.D. 1998).

Here, the record includes a transcript in which Movant specifically was asked whether anyone made any promises or threats to her or her family to induce her to plead guilty, and Movant's response was no. When Movant was asked whether her attorney refused to comply with any of her requests, Movant responded no. Movant answered that

10

she had enough time with her attorney and her attorney had answered all her questions. When asked whether Movant had any complaints or criticisms of her attorney, Movant responded no. She additionally did not know of anything her attorney could have done that he had not done. Movant responded yes, that she believed she had been fully advised by her attorney as to all aspects of her case, including her legal rights and the possible consequences of her plea. She believed her attorney "adequately, completely, and effectively represented" her in her defense to the charges. Movant also stated she understood that she would otherwise be entitled to a trial by jury instead of pleading guilty, but she was waiving those rights. Movant answered that neither her attorney nor anyone else had told her to lie in response to the plea court's questions. She wished to continue with her plea, and answered that she was pleading guilty voluntarily and of her own free will because she was guilty as charged. After Movant pled guilty, the plea court further made a finding that the defendant's plea "is made voluntarily and intelligently with a full understanding of the charge and the consequences of the plea and with an understanding of her rights attending a jury trial and the effect of a plea of guilty on those rights." The court further found a factual basis for the plea and accepted the plea of guilty. It is hard to believe that anyone could read the record of the guilty plea and believe that Movant was somehow confused or mislead about the questions and her answers to those questions.

Even six months later, at sentencing, the record shows that Movant was asked again whether there was any reason why she should not be sentenced, to which Movant responded no. After sentencing Movant, the court examined her as to the assistance of her counsel. Movant responded that her Plea Counsel, who was present with her for the

11

plea and sentencing and represented her throughout the case, had sufficient opportunity to discuss her case before the plea. Movant answered that Plea Counsel did everything asked of him and refrained from doing things Movant asked him not to do. The court asked Movant if her attorney communicated any threats or promises to induce her to enter her plea of guilty, and Movant answered no. Movant again said she was "absolutely" satisfied with her attorney's services, whether or not she was satisfied with the outcome of the case. For some reason, a period of confinement has seemingly erased Movant's memory of the questions and answers given not only at the time she entered her plea, but six months later when she was sentenced.

Based on the record before us, we find that Movant was sufficiently questioned in detail during her plea and sentencing hearings to determine that her allegation that Plea Counsel induced her to plead guilty is refuted by the record. Further, the record also refutes the allegation that Movant wanted to go to trial and testify that she was not aware that the co-defendants were going to the victim's home to assault the victim and that she did not intend for the co-defendants to assault the victim. Rather, Movant admitted to the evidence that would be presented at trial, as it was recited by the State, including the three people that would have testified against her. The record demonstrates Movant's clear incentives to avoid a trial. Her claim here, thus, borders on frivolous.[1]

We find the motion court correctly denied Movant's motion for post-conviction

---

[1] Courts wish "to discourage frivolous and unfounded allegations which must be addressed by trial courts already over burdened with a proliferation of post-conviction remedy motions." State v. Bradley, 811 S.W.2d 379, 383 (Mo. banc 1991) (discussing the requirement for a movant's verification of his post-conviction motion listing all grounds for relief known to him and his acknowledgment of waiver of all unlisted grounds). Appellate counsel is under no obligation to raise every issue asserted by a movant, and "can make the strategic decision to remove frivolous claims not likely to result in reversal in favor of putting forth stronger arguments." Holman v. State, 88 S.W.3d 105, 110 (Mo. App. E.D. 2002). Avoiding such frivolous claims "promotes judicial economy by focusing the Court's attention on those issues most pertinent to resolving the case." Id. Further, we suggest that avoiding frivolous claims in one case may promote justice by focusing limited judicial resources on *other cases* in need of resolution.

relief without an evidentiary hearing.

### III.  Conclusion

The judgment of the motion court is affirmed.

_____
Roy L. Richter, Presiding Judge

Clifford H. Ahrens, J., concurs
Glenn A. Norton, J., concurs